**In re DEVON CAPITAL MANAGEMENT, INC., Debtor.**

**Financial Management Sciences, Inc., Debtor.**

**James R. Walsh, Trustee, Movant,**

**v.**

**Hefren–Tillotson, Inc., Respondent.**

**Bankruptcy Nos. 98–25314– BM, 98–25315–BM.**

**Motion Nos. 01–0297M, 01–0411M, 01–0298M. 01–0413M.**

United States Bankruptcy Court, W.D. Pennsylvania.

March 22, 2001.

James R. Walsh, Spence Custer Saylor Wolfe & Rose, Johnstown, PA, trustee.

Richard A. Finberg, Malakoff Doyle & Finberg, P.C., Pittsburgh, PA, for South Butler County School District, Bald Eagle School District.

Michael J. Betts, Betts Law Firm, Pittsburgh, PA, for Tyrone Area School District.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

The chapter 7 trustee in the above bankruptcy cases has brought a motion to approve a settlement of a class action against Hefren–Tillotson, Inc. pending in state court. He also requests an order barring any third party from asserting any claims against Hefren–Tillotson in connection with certain "tainted" securities transactions in which either of the debtors and Hefren–Tillotson were involved.

Various defendants in adversary actions brought by the chapter 7 trustee who are not parties to the settlement agreement but who nonetheless would be subject to the proposed bar order have objected to its inclusion in any order approving the settlement agreement.

In addition, special litigation counsel to the chapter 7 trustee in the class action pending in state court has submitted an application requesting payment of legal fees and costs incurred in connection with his representation of the chapter 7 trustee in that action. The application is unopposed.

For reasons set forth below, we will approve the settlement, but without the bar order. Also, for the time being we will defer consideration of the application of special litigation counsel.

### – FACTS –

Involuntary chapter 7 petitions were brought against debtors Devon Capital Management, Inc. (at No. 98–25314–BM) and Financial Management Sciences, Inc. (at No. 98–25315–BM) on July 5, 1998. Orders for relief were issued and a chapter 7 trustee for both cases was appointed on September 16, 1998.

Hefren–Tillotson is a securities broker-dealer which was involved in numerous

"tainted" securities transactions in which debtors along with others also were involved.

On September 29, 1998, Bald Eagle School District and South Butler County School District initiated a class action in the Court of Common Pleas of Blair County, Pennsylvania, against Hefren–Tillotson and four of its individual employees and representatives. The amended complaint alleged that defendants had executed securities trades at arbitrary and unfair prices and had dissipated assets of debtor Financial Management Sciences in which the class claimed an interest. Only Count III, which alleged a fraudulent scheme, has survived. With the exception of one individual, all claims against employees and representatives of Hefren–Tillotson were dismissed.

We issued an order on May 14, 1999, approving appointment of special counsel to represent the chapter 7 trustee on a contingency fee basis in various types of litigation. Subject to ultimate approval of this court, special counsel was to receive in connection with all litigation of the type involved in this instance twenty-five percent of the initial five million dollars recovered and twenty percent of any recovery in excess of that amount.[1]

The chapter 7 trustee filed a Praecipe for a Writ of Summons against Hefren–Tillotson in the Court of Common Pleas of Allegheny County, Pennsylvania, on September 13, 2000. No complaint was ever filed, however, because the settlement agreement presently before us was reached in the class action pending in the Court of Common Pleas of Blair County. The parties to the settlement agreement were the chapter 7 trustee, the members of the class, and all defendants named in the amended complaint.

Under the terms of the settlement agreement, Hefren–Tillotson agreed to pay the sum of $600,000 to the chapter 7 trustee, who was to distribute all of the settlement proceeds to creditors of debtors' bankruptcy estates in accordance with the provisions of the Bankruptcy Code.

Approval of the settlement agreement by both this court and the Court of Common Pleas of Blair County is required before the settlement takes effect. The intent of the settlement agreement was to release defendants from:

> ... any and all liabilities to any person arising out of, or relating to, any of the facts, events, circumstances, allegations claims, causes of action, acts, omissions, failures to act, of whatever kind or character described ... in the Class Action and the Trustee's Action .. *or any other action which may be related to the Subject Matter of the Litigation.*

§ 4.1.

In accordance with this stated intent, the chapter 7 trustee and class members agreed to release and discharge defendants from all claims or causes of action they had or may have thereafter relating to the subject matter of the litigation § 4.3. The releases were to be executed pursuant to the provisions of the Pennsylvania Uniform Contribution Among Joint Tortfeasors Act, 42 Pa.C.S.A. §§ 8312 *et seq.*, and, to the extent applicable, the Pennsylvania Comparative Negligence Act, 42 Pa.C.S.A. § 7102 § 4.4.

The chapter 7 trustee and class members further agreed to reduce the amount of their recovery from and the common liability of any additional defendant, including defendants in any adversary actions brought by the chapter 7 trustee, to the extent of the released parties' pro rata

---

1. Special counsel also represents the class in the action presently pending in state court.

share of damages recoverable against all tortfeasors. § 4.5.

The settlement agreement was not binding unless the order approving the settlement contained the following bar order:

Any and all persons or entities are hereby enjoined from asserting any claims against Hefren–Tillotson and its officers, directors, agents, employees, attorneys or representatives, or anyone (or any entity acting in such capacity), and its predecessors and successors, in law or in equity, including but not limited to claims for contribution, indemnity, unjust enrichment, fraudulent conveyance, preference, or otherwise, arising from Hefren–Tillotson acting as broker-dealer or otherwise transferring moneys or securities in any transaction between (1) John Gardner Black, Devon and/or FMS, and/or (2) any other entity, including Hefren–Tillotson and/or various defendants in Adversary Actions brought by the Trustee, and such claims are hereby discharged and extinguished (this provision shall be referred to as the "third Party Injunction"). Nothing in this order prevents any such enjoined persons or entities from presenting defenses to any action brought against them by the Trustee, and receiving a *pro rata* release if such a court of competent jurisdiction finally adjudicates such party to be a joint tortfeasor entitled to contribution under the Pennsylvania Uniform Contribution Among Joint Tortfeasors Act, 42 Pa.C.S.A. § 8327.

§ 4.7(i).

Should we issue an order approving the settlement agreement without the bar order found at § 4.7(i), Hefren–Tillotson and the individual defendants have ten days from entry of the order to accept or reject the settlement agreement without the bar order included. § 4.8.

In consideration of the joint tortfeasor's release, Hefren–Tillotson and the individual defendants covenanted not to sue or otherwise pursue, in any manner, any contribution or indemnification or other claim against any class member, the chapter 7 trustee, or any defendant in an adversary action brought by the chapter 7 trustee. § 4.11.

The chapter 7 trustee in the above bankruptcy cases has brought adversary actions against, among others, Toledo Hospital, Carson City–Crystal Area Schools, Comstock Park Public Schools, L'Anse Creuse Public Schools, Lincoln Consolidated Schools, School District of the City of River Rouge, and Yale Public Schools (hereinafter referred to collectively as "objectors").

The Court of Common Pleas of Blair County issued an order on February 2, 2001, approving the above settlement agreement without striking or modifying any portion thereof.[2]

The chapter 7 trustee has brought a motion in this court for an order approving the settlement agreement and requesting that the bar order found at § 4.7(i) be made an express part of the order. Also, special counsel to the chapter 7 trustee has submitted an application for an award of attorneys' fees in the amount of $145,000.00 and for costs and expenses in the amount of $13,794.74 for representing the chapter 7 trustee in the above class action.[3]

---

**2.** None of the objectors, it should be noted, is a member of the class in the class action brought in state court or is a creditor of either debtor's bankruptcy estate.

**3.** Although the matter involving Hefren–Tillotson was litigated almost entirely in the class action in the state court, any compensation special counsel to the chapter 7 trustee re-

Objectors oppose the motion of the chapter 7 trustee because of the bar order found at § 4.7(i) of the settlement agreement. They argue that we should not approve the settlement agreement *in toto,* but instead should modify it by striking the bar order.

Hearings on the motion of the chapter 7 trustee and the objection thereto by objectors and on the uncontested fee application of special counsel to the chapter 7 trustee were held on February 13, 2001.

## – DISCUSSION –

■ We should consider the following factors, when applicable, in determining in a bankruptcy context whether to approve a settlement agreement: (1) the probability of success on the merits in the litigation being settled; (2) the likely difficulties in collecting a judgment; (3) the complexity of the litigation and the attendant expense, inconvenience, and delay; and (4) the paramount interest of creditors. *Myers v. Martin (In re Martin),* 91 F.3d 389, 393 (3d Cir.1996).

We conclude, without need for much ado, that these factors favor approval of the settlement. It is not certain, for instance, that the chapter 7 trustee would prevail in any action he might bring against Hefren–Tillotson. Were he to prevail, it is not obvious that Hefren–Tillotson has sufficient assets with which to satisfy a judgment against it. Also, due to the complexity and large number of the securities transactions in which Hefren–Tillotson was involved, debtors' estates most likely would incur considerable expense if the chapter 7 trustee had to prove his case

against Hefren–Tillotson at trial. The paramount interest of estate creditors would be better served by a settlement of such complex and expensive litigation which might not result in a substantial recovery for the estates even if the chapter 7 trustee were to prevail at trial.

■ Consideration of these factors is not, however, the end of our inquiry in this instance. We may approve a settlement only if it is "fair and equitable". *U.S. v. AWECO, Inc. (In re AWECO, Inc.),* 725 F.2d 293, 297 (5th Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984). Even if a settlement is fair and equitable to the parties to the settlement, approval is not appropriate if the rights of others who are not parties to the settlement will be unduly prejudiced. We must determine that "no one has been set apart for unfair treatment". *Cullen v. Riley (In re Masters Mates and Pilots Pension Plan),* 957 F.2d 1020, 1026 (2d Cir.1992). Ignoring the effect of a settlement on rights of third parties "contravenes a basic notion of fairness". *In re AWECO,* 725 F.2d at 298. The same is no less true where, as here, approval of a class action settlement is at issue. *Eichenholtz v. Brennan,* 52 F.3d 478, 482 (3d Cir.1995).

■ Objectors oppose the motion of the chapter 7 trustee because of the bar order.[4] They assert that we should not approve the settlement insofar as it includes the proposed bar order. Objectors maintain that they have suffered losses of their own as a result of securities transactions involving FMS or Devon and Hefren–Tillotson for which they may wish to assert

---

ceives in connection with the matter will come exclusively from the amount the chapter 7 trustee recovers from Hefren–Tillotson and distributes under the provisions of the Bankruptcy Code.

**4.** It is questionable whether objectors would have standing to object to the motion to approve the settlement agreement on any other ground. The only effect it has on them results from the bar order. *Eichenholtz,* 52 F.3d at 482.

claims against Hefren–Tillotson. The bar order would prohibit them from doing so. No consideration flows to them in exchange for the bar order, objectors maintain, inasmuch as they neither are members of the class in the state court action nor creditors of debtors' bankruptcy estates who will receive any distribution of estate assets by the chapter 7 trustee.

In support of his request for an order containing the bar order provision, the chapter 7 trustee cites to *Eichenholtz, supra,* wherein the Third Circuit affirmed an order approving a settlement agreement containing a bar order similar to the one found at § 4.7(i) of the above settlement agreement. His reliance upon *Eichenholtz* in this instance, in our estimation, is misplaced.

Plaintiffs in *Eichenholtz* brought a class action against an entity that had issued allegedly objectionable securities, against certain broker-dealers, and against various individuals. The defendant broker-dealers all filed cross-claims for contribution or indemnification against the entity that had issued the securities. *Eichenholtz,* 52 F.3d at 480–81.

Plaintiffs eventually arrived at a partial settlement with certain of the individual defendants and the issuer of the securities. The defendant broker-dealers were not parties to the settlement. The partial settlement agreement included a provision whereby the trial judge would, in approving the settlement agreement, enter a bar order which provided that:

> ... all claims for contribution or indemnification however denominated, against the settling defendants, based upon liability on any of the settled claims, in favor of persons, including [the] non-settling defendants are extinguished,

discharged, satisfied and/or otherwise barred and unenforceable.

*Eichenholtz,* 52 F.3d at 481.

The partial settlement agreement also contained a proportionate fault reduction provision which expressly barred plaintiffs in the class action:

> ... from seeking from the non-settling defendants any amounts greater than the proportionate liability, if any, of the non-settling defendants for damages, if any, determined at trial. . . .

*Id.*

The trial court determined that the partial settlement was fair, reasonable, adequate and in the best interest of the settling parties and entered an order approving it, whereupon non-settling defendants appealed. They argued on appeal that the trial court had abused its discretion in that they had suffered prejudice because the bar order extinguished their right to contribution and indemnification from settling defendants. *Eichenholtz,* 52 F.3d at 482–83.

The Third Circuit noted that, in addition to the bar order, the partial settlement also contained a proportionate fault reduction provision whereby the finder of fact in the trial of a non-settling defendant would assess the relative culpability of both the settling and non-settling defendants. The non-settling defendants were responsible only for a percentage of the judgment against them. Such a provision, the Third Circuit concluded, was the "equivalent" of a claim for contribution in that a non-settling defendant was responsible only for its portion of the total liability. *Eichenholtz,* 52 F.3d at 486–87.

The Third Circuit further noted that the United States Supreme Court, in *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 114 S.Ct. 1461, 1466, 128 L.Ed.2d 148 (1994), had stated that the proportionate fault re-

duction method adequately protected contribution rights of non-settling defendants in an admiralty context and went on to conclude that the same was true in a case alleging violations of federal securities law. *Eichenholtz*, 52 F.3d at 487 n. 16. After so concluding, the Third Circuit determined that the trial court had not abused its discretion in imposing the bar order containing the proportionate fault reduction provision and affirmed the order approving the partial settlement agreement. *Eichenholtz*, 52 F.3d at 487.

As we understand it, the upshot of *Eichenholtz* is that a court must look beyond the presence of a bar order when determining whether to approve a settlement agreement. Such a settlement is not prejudicial to non-settling defendants and accordingly may be approved if it also contains, as does the settlement agreement presently under consideration, a proportionate fault judgment reduction provision. Notwithstanding the inclusion of a bar order in the settlement agreement, the presence of a proportionate fault reduction provision is the "equivalent" of a claim for contribution. According to the chapter 7 trustee and Hefren–Tillotson, the bar order at § 4.7(i) of the above settlement agreement is not prejudicial to objectors' interests because the settlement agreement also contains a proportionate fault reduction provision at § 4.5. The chapter 7 trustee has agreed to reduce the amount of any recovery from objectors to the extent of Hefren–Tillotson's pro rata share of damages recoverable by the chapter 7 trustee from all tortfeasors.

This argument is without merit. *Eichenholtz* does not in this instance support the inference that approval of the settlement agreement with the bar order included is "fair and equitable" to objectors.

The settlement agreement approved in *Eichenholtz* was a partial settlement.

Plaintiffs in that lawsuit settled with some of the named defendants but not with others. The settlement in the present instance, by contrast, is total in that all of the parties to the lawsuit have agreed to the settlement. Objectors, we have noted, are not parties to the class action pending in state court.

Not only are the objectors in the present matter not parties to the class action pending in state court or to the settlement thereof, they also have not asserted in any forum any claims against Hefren–Tillotson for contribution. The fact that the settlement agreement contains a version of the proportionate fault reduction rule at § 4.7(i), and thus provides the "equivalent" of a claim for contribution, has no bearing on whether the bar order in this instance is fair or prejudicial to objectors. *Eichenholtz* did not address a situation in which parties subject to the bar order had not asserted a claim for contribution against any of the settling defendants.

The matter does not end there. *Eichenholtz* provides no basis for approving the above settlement agreement even if the above problems were not present. The bar order in *Eichenholtz* pertained only to claims by non-settling parties against settling parties for contribution or indemnification, "however denominated".

The bar order in the present matter is far *broader* in scope in that it prohibits anyone from asserting *any* claims against Hefren–Tillotson when acting as a broker-dealer for transactions involving Devon or FMS. The prohibition is not limited in scope merely to claims for contribution or indemnification. It also prohibits "claims ... for unjust enrichment, fraudulent conveyance, preference, *or otherwise*" arising from Hefren–Tillotson's actions as broker-dealer in any transaction between either of the debtors and any other entity, including

defendants in adversary actions brought by the chapter 7 trustee.

Aside from claims for contribution, we do not believe that the proportionate fault reduction rule would result in an "equivalent" for any of the claims prohibited by § 4.7(i) of the settlement agreement. Prohibiting objectors from asserting any claims other than for contribution they may have against Hefren–Tillotson for transactions between either of the debtors and objectors in which Hefren–Tillotson was involved would be highly prejudicial. Objectors would receive no consideration in return for the prohibition against asserting such other claims against Hefren–Tillotson.

Hefren–Tillotson has intimated that objectors would not be prejudiced in this regard because they realistically have no meritorious claims they could assert against it at this stage. Even though we are not able to think of any claims which objectors might have against Hefren–Tillotson, we are reluctant to conclude for this reason that objectors will not be prejudiced by the bar order. We are not the sole repository of insight and wisdom in this regard and cannot rule out the possibility that objectors have in mind potentially meritorious claims they may assert against Hefren Tillotson.

At least one appellate court of which we are aware has upheld a settlement bar order which prohibited claims against a settling party not only for contribution but also for fraud or negligence. It did so after satisfying itself that the latter claims were not independent of a claim for contribution. *In re U.S. Oil and Gas Litigation*, 967 F.2d 489, 495–96 (11th Cir.1992).

Although instructive, we are not bound by the holding in the case. Moreover, it is distinguishable from the present case in that the bar order at issue here is sufficiently broad to cover claims that are not merely claims for contribution masquerading as something else. The bar order in this instance prohibits *any* person or entity from asserting any claim against arising from its actions as broker-dealer for *any* transaction between Devon or FMS and *any* defendant in *any* adversary action brought by the chapter 7 trustee. All such claims against Hefren–Tillotson are discharged and extinguished.

We conclude on the basis of the foregoing that, with the exception of § 4.7(i), we should approve the terms and provisions of the above settlement agreement. Accordingly, we will issue an order approving the settlement that does not include the bar order. In accordance with § 4.8 of the settlement agreement, Hefren–Tillotson will have ten days from entry of the order to decide whether to accept or reject the settlement agreement without the bar order.

Because it is not now known whether Hefren–Tillotson will accept or reject the settlement agreement minus the bar order, it would be premature for us to consider at this time the fee application of special counsel to the chapter 7 trustee. Counsel was appointed on a contingency fee basis and would not be entitled to payment of any fees unless a monetary recovery for the benefit of the bankruptcy estates is achieved. The chapter 7 trustee shall file a notice with the court at the end of ten days indicating whether or not Hefren–Tillotson has accepted the settlement as modified. If it has, we will consider the fee application of special counsel.

An appropriate order shall issue.

### *ORDER OF COURT*

AND NOW, this **22nd** day of **March, 2001**, in accordance with the accompanying memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED**

that: (1) with the exception of § 4.7(i), the settlement agreement between the chapter 7 trustee and Hefren–Tillotson is **AP-PROVED;** (2) the request for inclusion of a bar order in the form of § 4.7(i) in the order approving the settlement is **DE-NIED;** (3) at the end of ten days from entry of this order, the chapter 7 trustee shall **FILE A NOTICE** with the court indicating whether or not Hefren–Tillotson has accepted the settlement agreement as modified; (4) consideration of the fee application of special counsel to the chapter 7 trustee is **DEFERRED** until it is determined whether Hefren–Tillotson has accepted or rejected the settlement agreement as modified.

It is **SO ORDERED.**